UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DOUGLAS C. CHARNOCK, JR., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 18-cv-676 (TSC) |
| WILLIAM BARR, Attorney General of the United States, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Douglas Charnock, Jr. brings this action against the Department of Justice ("DOJ"), through Attorney General William Barr,[1] under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, to compel the DOJ to process and release records in response to his FOIA request. The parties have filed cross-motions for summary judgment. For the reasons stated herein, the DOJ's Motion for Summary Judgment will be GRANTED, and Plaintiff's Cross-Motion for Summary Judgment will be DENIED.

### I. BACKGROUND

Charnock filed a complaint with the DOJ's Civil Rights Division in January 2017, alleging that the Supreme Court of Virginia violated his rights by denying him federal assistance under the Americans with Disabilities Act ("ADA").[2]

---

[1] William Barr is substituted for Jeff Sessions as the proper party defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] The substance of Plaintiff's ADA claim with the Commonwealth of Virginia is unclear.

The DOJ decided not to act on Charnock's complaint in May 2017, explaining that the DOJ "receives thousands of ADA complaints each year," and "do[es] not have the resources to resolve all of them." Def.'s Mot. For Summ. J., Decl. of Nelson D. Hermilla, Ex. D at 19–21,[3] ECF No. 7-1 ("DOJ's First Denial Letter").  The next month, the DOJ sent a follow-up letter to Charnock and stated that the DOJ "represents the interests of the United States, rather than individual complainants" in ADA enforcement claims, and because of the large number of complaints it receives compared to its limited resources, the DOJ is "unable to open an investigation of every complaint" it receives.  *Id.* at 22 ("DOJ's Second Denial Letter").

Charnock then submitted a FOIA request to the DOJ for "documents, communications, notes, etc. that the Agency has used in its determination not to assist Mr. Charnock."  Complaint, ECF No. 1 ("Compl.") ¶ 6.  The DOJ searched for responsive documents and found one responsive document, DOJ's Second Denial Letter, which it forwarded to Charnock's counsel in its final FOIA response.  *Id.* at ¶ 7.

Charnock then filed this suit alleging that: (1) the DOJ unlawfully withheld agency records under FOIA and (2) the DOJ's decision to not investigate his complaint against the Supreme Court of Virginia violated the APA.  *See id*. at ¶¶ 9–15, 17–18.

After receiving the complaint, the DOJ conducted another search for responsive documents, using Charnock's name as the search term in two databases, the correspondence tracking system ("CTS") and the case management system ("ICM")—"the only locations within the agency where it is reasonably likely to find records responsive to the FOIA request."  Decl. of Nelson D. Hermilla, ECF No. 7-1 at 2, ¶ 5 ("Hermilla Decl.").  The DOJ's second search found three responsive documents, which it produced to Charnock's counsel: (1) The DOJ's First

---

[3] The court is using the ECF page numbers.

Denial Letter, (2) the DOJ's Second Denial Letter (which had been produced after the first search), and (3) a summary of Charnock's complaint to the DOJ. *Id.*

The DOJ has moved for summary judgment, arguing that it conducted a reasonable and adequate search under FOIA, and that its decision not to investigate Charnock's complaint is an unreviewable exercise of the agency's prosecutorial discretion under the APA. Charnock cross-moved for summary judgment, arguing that the DOJ's search was inadequate and that its prosecutorial discretion under the APA is rebuttable and reviewable by the court.

## II. LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is material if "a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *ViroPharma Inc. v. Dep't of Health & Human Servs.*, 839 F. Supp. 2d 184, 189 (D.D.C. 2012) (citations omitted). When an agency moves for summary judgment on the grounds that it has discharged its FOIA obligations, all underlying facts and inferences are analyzed in the light

3

most favorable to the FOIA requester, and only after the agency proves that it has fully discharged its FOIA obligations is summary judgment appropriate. *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996); *see also Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983) ("[T]he agency bears the burden of showing that there is no genuine issue of material fact, even when the underlying facts are viewed in the light most favorable to the requester.").

### III. ANALYSIS

#### A. FOIA Claim

Charnock challenges both the sufficiency of the DOJ's affidavit (the Hermilla Declaration), and the adequacy of the search.

##### 1. The Hermilla Declaration

An adequate search is "reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). An agency "must provide a 'reasonably detailed' affidavit describing the scope of [the] search" to meet its burden for summary judgment. *Pinson v. U.S. Dep't of Justice*, 245 F. Supp. 3d 225, 241 (D.D.C. 2017) (quoting *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313–14 (D.C. Cir. 2003)).

In support of the adequacy of its search, the DOJ submitted the declaration of Nelson D. Hermilla, the Chief of the FOI/PA Branch of the DOJ's Civil Rights Division. Hermilla Decl. ¶ 1. Agency affidavits, like Hermilla's declaration, are "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir.1981)). Here, the DOJ's search

encompassed two databases containing the correspondence and investigation/case information for the Civil Rights Division.  Hermilla Decl. ¶ 5.  Hermilla's declaration explained that the DOJ conducted "a further search using Plaintiff's name in the correspondence tracking system ("CTS") and the case management system ("ICM") . . . [which] located 5 pages of records responsive to its request." *Id.*  Hermilla further explained that these two databases "are the only locations within the agency where it is reasonably likely to find records responsive to the FOIA request." *Id.*

Hermilla's declaration supports the adequacy of the DOJ's search by providing the specific search term used, the files searched, and an explicit declaration that all files likely to contain responsive records were searched.  *See id.*; *Ryan v. FBI*, 174 F. Supp. 3d 486, 492–93 (D.D.C. 2016) (defendant satisfied its burden to demonstrate an adequate search when its affidavit "provided the search terms used, the files searched, and explicitly declared that all files likely to contain responsive records were searched").  Hermilla's assertion regarding the CTS and ICM databases indicate those databases "constitute the entire universe of files likely to contain responsive materials."  Hermilla Decl. ¶ 5 ("[The CTS and ICM] databases . . . are the only locations within the agency where it is reasonably likely to find records responsive to the FOIA request."); *see also Mobley v. CIA*, 806 F.3d 568, 584 (D.C. Cir. 2015) (finding the FBI's search of the CRS to be adequate because of, in part, an agency declaration asserting that the FBI's search was "reasonably likely to produce the information [plaintiff] requested") (citation omitted); *Walston v. U.S. Dep't of Def.*, 238 F. Supp. 3d 57, 64 (D.D.C. 2017) (holding an agency's search was inadequate when its agent's affidavit did not state that the searched databases "constitute the entire universe of files likely to contain responsive materials").  Thus, Hermilla's declaration illustrates in "relatively detailed and non-conclusory" terms that the

5

DOJ's search was both reasonable and adequate, and that the search method was "reasonably calculated to uncover all relevant documents." *See SafeCard*, 926 F.2d at 1200; *Morley*, 508 F.3d at 1114.

Charnock argues that Hermilla's declaration is inadequate because it provides no evidence of what search the DOJ actually conducted. *See* ECF No. 10, Pl.'s Op. to Def.'s Mot. for Summ. J. and Cross-mot. for Summ. J. (Pl.'s Mot. Summ. J.) at 1. Specifically, Charnock claims the DOJ does not explain why the CTS and ICM databases were reasonably likely to produce results, and which other sources were unreasonably likely to produce results. *Id.* at 8 n.1. However, "[t]here is no requirement that an agency seek every record system." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Rather, a search may be reasonable if it includes all systems "that are likely to turn up the information requested." *Id.* While Hermilla's description of the systems searched by the DOJ is brief, it meets *Oglesby*'s reasonable search standard. *Id*. ("A reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched, is necessary . . . to determine if the search was adequate in order to grant summary judgment."). Additionally, Hermilla's declaration adequately describes that the DOJ searched the records systems "that are likely to turn up the information requested." *See id.*; Hermilla Decl. ¶ 5 ("[CMS and ICM] are the only two locations within the agency . . . to find records responsive to the FOIA request.").

Charnock requested written communications and notes related only to his name and his complaint to the DOJ. In *Coffey v. Bureau of Land Management,* 249 F. Supp. 3d 488, 500 (D.D.C. 2017), the court found that "requiring a more painstakingly detailed search description . . . would be incongruous with what [plaintiff] asked for: a discrete set of written communications

6

for the two individuals named in her request." Due to "the relative simplicity of the FOIA request" in this matter, the court finds that the detail regarding the DOJ's search supplied in Hermilla's declaration is sufficient. *Id.*

### 2. The Adequacy of the Search

Charnock also contends that the DOJ's second search for responsive documents means the first search was inadequate and not made in good faith. *See* Pl.'s Mot. Summ. J. at 6–7. As noted above, the search in this case encompassed DOJ's CMS and ICM databases, record systems likely to possess the requested information; DOJ was not required to search every record systems in the agency. *See Oglesby*, 920 F.2d 57 at 68. Moreover, Charnock does not suggest any alternative search terms that should have been used, nor does he suggest any other DOJ databases that should have been searched. *See Long v. Immigr. and Customs Enf't*, 149 F. Supp. 3d 39, 60 (D.D.C. 2015) (searching the "authoritative" database was adequate because plaintiff did not offer any reason to believe other database systems contained responsive records). Charnock's allegations "do not point to any place or source likely containing responsive records that [the DOJ] failed to search." *See Coffey*, 249 F. Supp. 3d at 500 (internal quotation marks omitted) (quoting *Valencia-Lucena v. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999)). Therefore, a "more thorough explanation of why [the DOJ] chose to search only the locations it did" is not warranted. *See Coffey*, 249 F. Supp. 3d at 500.

Charnock further contends that because the first search did not uncover all five pages that the DOJ eventually released to him, "it is logical to conclude by more than mere speculation that there are still documents missing from the FOIA request." Pl.'s Mot. Summ. J. at 8. He argues that "interoffice memorandums, e-mails, memos, handwritten notes, *inter alia*" should exist if the DOJ carried out an analysis of how and why it decided not to investigate Charnock's

complaint against the Supreme Court of Virginia. *Id.*; *see also* Plaintiff's Rebuttal to Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment and Reply Memorandum in Support of Defendant's Motion for Summary Judgment, ECF No. 22 at 5 ("Pl.'s Reply") ("Defendant continues to fail to provide a complete FOIA response that would be reasonable for this type of request – documentation that it actually carried out an analysis of how and why it determined not to investigate this Veteran's complaint."). However, even if such emails, internal memorandums, *inter alia* once existed (and there is no evidence that they did exist), "[t]he fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it." *Greenberg v. Dep't of Treasury*, 10 F. Supp. 2d 3, 13–14 (D.D.C. 1998) (citing *Miller v. Dep't of State*, 779 F.2d 1378, 1385 (8th Cir. 1985)).

Because Hermilla's declaration is afforded "a presumption of good faith," Charnock cannot rebut the adequacy of the DOJ's search with "purely speculative claims." *See Morley*, 508 F.3d at 1120. And "[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard*, 926 F.2d at 1201. Additionally, "the failure of an agency to turn up one specific document in its search does not alone render a search inadequate." *Iturralde*, 315 F.3d at 315. Therefore, the fact that the DOJ decided not to act on Charnock's claim, yet no emails or inter-office memoranda memorializing the decision were uncovered, does not render the agency's search inadequate. There is nothing to suggest the DOJ would uncover any additional documents in a third search. Charnock's assertion that documents should exist is speculative and is insufficient to overcome the "presumption of good faith" established through Hermilla's declaration. *See Safecard*, 926 F.2d at 1200–01.

The court therefore finds that there is no genuine issue of material fact as to the adequacy of the DOJ's search and will grant DOJ's motion for summary judgment as to the FOIA claim.

### B. APA Claim

Charnock claims the DOJ's decision not to investigate his discrimination complaint violated the APA because it was arbitrary, capricious, and contrary to law. On a motion for summary judgment in a suit seeking APA review, the court must set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). The court's review is "highly deferential" and begins with a presumption that the DOJ's actions were valid. *See Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981). The plaintiff bears the burden of establishing the invalidity of the agency's action. *Id.*

In *Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985), the Supreme Court concluded that "an agency's decision not to prosecute or enforce . . . is a decision generally committed to an agency's absolute discretion" and is "presumptively unreviewable" under the APA. *See also Citizens for Resp. and Ethics in Wash. v. Fed. Election Comm'n*, 892 F.3d 434, 441 (2018) ("Following [*Heckler v.*] *Chaney*, this court has held that if an action is committed to the agency's discretion under APA § 701(a)(2)—as agency enforcement decisions are—there can be no judicial review for abuse of discretion, or otherwise."). Additionally, "whether agency resources are best spent on this violation or another" and "whether the particular enforcement action requested best fits the agency's overall policies" are presumptively decisions committed to an agency's discretion. *Heckler*, 470 U.S. at 831. The DOJ letters declining to act on Charnock's complaint cite both agency resources and the agency's overall policies in explaining its decision. *See* DOJ's First Denial Letter; DOJ's Second Denial Letter.

9

Charnock argues that *Heckler*'s presumption is rebutted because the DOJ did not cite authority for its prosecutorial discretion. *See* Pl.'s Mot. Summ. J. at 9. But Charnock bears the burden of proof, and he fails to cite any statutory, regulatory, or case law to support his contention. *See* Pl.'s Reply at 3. Because of the high deference afforded to agencies and "the presumption that agency decisions not to institute proceedings are unreviewable," *Heckler*, 470 U.S. at 837, the court finds that Charnock has not met his burden of establishing the invalidity of the DOJ's decision not to investigate his complaint.

Charnock also contends that the DOJ did not follow the steps listed on its ADA Complaint Form website. *See* Pl.'s Reply at 2–3; Pl.'s Reply, Ex. B. Yet the same DOJ webpage provides: "We cannot investigate or litigate every complaint. If we are unable to take any action on your complaint, we will send you a letter telling you this." *See* How to File an Americans with Disabilities Act Complaint with the U.S. Department of Justice, https://www.ada.gov/filing_complaint.htm#8%20l (last visited July 18, 2019). In both its first and second denial letters to Charnock, the DOJ explained that its decision was based on the volume of claims it receives compared with its limited resources, and the agency's mission to represent the interests of the United States, not individual claimants. *See* DOJ's First Denial Letter; DOJ's Second Denial Letter. Again, Charnock has failed to meet his burden of establishing that the DOJ's exercise of discretion in this case is subject to judicial review under the APA. The court therefore finds that there is no genuine issue of material fact as to the reviewability of the DOJ's decision not to investigate Charnock's claim and will grant Defendant's motion for summary judgment as to the APA claim.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF No. 7, will be GRANTED and Plaintiff's Cross-Motion for Summary Judgment, ECF No. 11, will be DENIED.

A corresponding Order will be issued separately.

Date: July 18, 2019

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge